United States District Court
Southern District of Texas
**ENTERED**
May 20, 2016
David J. Bradley, Clerk

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | | |
|---|---|---|
| ROSTASHIA HAYNES, | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION H-14-1759 |
| | § | |
| MEGAN J. BRENNAN, POSTMASTER | § | |
| GENERAL, UNITED STATES POSTAL SERVICE | § | |
| *Defendant*. | § | |

## SUMMARY JUDGMENT OPINION AND ORDER

This employment dispute is before the court on defendant's motion to dismiss (Dkt. 25) and alternative motion for summary judgment (Dkt. 28). Having considered the parties' submissions, argument of counsel at a hearing on April 5, 2016, and the law, defendant's motion to dismiss is denied, but its motion for summary judgment is granted.

## Background

The following facts are undisputed. Haynes, an African-American female, began working for the post office as a mail processor in November 2012. Shortly thereafter, she met a co-worker, Willie Talbert. Talbert began paying unwanted attention to Haynes, such as inviting her to a Christmas party and frequenting her work area. On different occasions, Talbert touched Haynes's thigh, stroked her hand, removed her leg from a chair, and forcibly kissed her on the forehead. On Valentines day 2013, Talbert sent Haynes flowers. At that point, Haynes complained to her supervisor, Dembra Gaines, about Talbert's actions. Talbert was instructed to stay away from Haynes and her work area. Talbert did not touch Haynes after this.

Haynes did not complain again until August 2013 when she submitted a written complaint to management.[1] Haynes' August 19, 2013 statement asserts that after her February complaint, she continued to feel threatened by Talbert, whom she had heard was a pedophile and registered sex offender. She also states that she heard a friend of Talbert was trying to get her transferred. Haynes's written complaint triggered a workplace investigation. Management promptly reassigned Talbert and his last day at the same facility as Haynes was August 28, 2013. After the investigation, Talbert was given a 14-day suspension.

Haynes first contacted the EEO Investigative Services Office for counseling on October 15, 2013. After mediation in December 2013, she filed a formal complaint with the USPS EEO office on January 29, 2014. On March 20, 2014, the EEO dismissed Haynes's complaint as untimely, because she did not first contact the EEO counselor's office within 45 days of the alleged discriminatory conduct are required by 29 C.F.R. § 1614.105(a)(1). Haynes was terminated in October 2014 for reasons not challenged in this lawsuit.[2]

Haynes filed this federal action within 90 days of receipt of the EEO decision, alleging claims of hostile work environment and retaliation in violation of Title VII against defendant. Defendant moves to dismiss the complaint for lack of jurisdiction and on the merits.

**<u>Analysis</u>**

    **A.    Motion to Dismiss.**

---

[1]    Dkt. 33 at 15-19.

[2]    Plaintiff did not challenge defendant's stated reasons for termination in her response brief (Dkt. 32), or at the hearing on April 5, 2016.

The exclusive remedy for federal employee claims of employment discrimination is provided by 42 U.S.C. § 2000e-16(a)-(e). *Pacheco v. Rice*, 966 F.2d 904, 905 (5th Cir. 1992). Under this legislative scheme, federal employees must first exhaust their administrative remedies before bringing suit in federal court. *Id.* In order to comply with the exhaustion requirement, a federal employee must initiate contact with an EEO Counselor within 45 days of the alleged discriminatory conduct. 29 C.F.R. § 1614.105(a)(1). The 45-day period must be extended if the employee shows that she was not notified and was not otherwise aware of the time limit. 29 C.F.R. § 1614.105(a)(2). The employee has the burden to establish a basis excusing compliance with the 45-day limitation period. *Teemac*, 298 F.3d at 454, 457. USPS contends that this court lacks jurisdiction over this case because Haynes did not exhaust her administrative remedies.[3]

Haynes alleges continuing harassment until August 29, 2013, the first day Talbert reported to work at a different facility.[4] Defendant does not offer a persuasive alternative

---

[3]     The Fifth Circuit has characterized the exhaustion requirement as jurisdictional. *Tolbert v. United States*, 916 F.2d 245, 247-48 (5th Cir. 1990); *Filer v. Donley*, 690 F.3d 643, 647 (5th Cir. 2012). However, it is not clear that exhaustion is truly jurisdictional instead of merely a claim-filing prerequisite. *See Rivers v. Geithner*, 548 F. App'x 1013, 1017 n.1 (5th Cir. 2013); *Johnson v. Brennan*, Civil Action No. 3:115-CV-1081, 2016 WL 791076 *1 (N.D. Tex. Jan. 27, 2016). The law is clear that the 45-day limitations period for contacting an EEO counselor is subject to waiver, estoppel, or tolling. 29 C.F.R. § 1614.105(a)(2); 29 C.F.R. 1614.604; *Pacheco*, 966 F.2d at 906; *Teemac v. Henderson*, 298 F.3d 452, 454-55 (5th Cir. 2002). The court concludes that the 45-day period is a claim-filing prerequisite subject to waiver, not a true jurisdictional requirement. Nonetheless, it appears that Haynes did meet the exhaustion deadline, although just barely.

[4]     Dkt. 33-1 at ¶ 11.

trigger date.[5] Adding 45 days to August 29 (or August 28, the last possible day harassment occurred) and applying the computation rules of Federal Rule of Civil Procedure 6 and 29 C.F.R. § 1614.604, Haynes's last day to contact the EEO Counselor was October 15, 2013, and she did so on that date. Because Haynes's EEO complaint appears timely, the court denies the motion to dismiss and will address the merits of the summary judgment motion.

### B.    Summary Judgment

Summary judgment is appropriate if no genuine issues of material fact exist, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). Dispute about a material fact is "genuine" if the evidence could lead a reasonable jury to find for the nonmoving party. *In re Segerstrom*, 247 F.3d 218, 223 (5th Cir. 2001). "An issue is material if its resolution could affect the outcome of the action." *Terrebonne Parish Sch. Bd. v. Columbia Gulf Transmission Co.,* 290 F.3d 303, 310 (5th Cir. 2002).

The standard for granting summary judgment in Title VII cases is by now too familiar to warrant extended recitation. *Reeves v. Sanderson Plumbing Prods., Inc.*, succinctly summarizes the appropriate inquiry:

> Whether judgment as a matter of law is appropriate in any particular case will depend on a number of factors. Those include the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case

---

[5]    *See* Dkt. 25 at 9.

and that properly may be considered on a motion for judgment as a matter of law.

530 U.S. 133, 148-49 (2000). The court must draw all reasonable inferences in favor of the non-movant, and disregard all evidence favorable to the moving party that the jury is not required to believe. *Id.* at 150-51. Trial courts should not treat discrimination differently than other ultimate questions of fact for purposes of Rule 50 or 56. *Id.* at 148.

**_Hostile Work Environment._**  To prove her sexual harassment claim, Haynes must show: (1) she belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon her sex; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of employment and create an abusive working environment; and (5) the employer knew of or should have known of the harassment and failed to take prompt remedial action. *Harvill v. Westward Communications, L.L.C.*, 433 F.3d 428, 434 (5th Cir. 2005).[6]

Title VII is violated when "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted). To support liability, the harassment must be such that a reasonable person would find it hostile or abusive, and the victim must in fact have found it so. *Harris*, 510 U.S. at 21-22. Whether a hostile working

---

[6]     The fifth element must be shown when the harassing employee is a co-worker, not a supervisor. *Vance v. Ball State Univ.*, 133 S. Ct. 2434, 2439 (2013); *Harvill*, 433 F.3d at 434. There is no dispute that Talbert was Haynes's co-worker.

environment exists depends on the totality of the circumstances, "including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance." *Septimus v. Univ. of Houston*, 399 F.3d 601, 611 (5th Cir. 2005).

Haynes's allegations regarding Talbert do not support a finding that his conduct was so severe or pervasive as to interfere with her work performance. The three instances of unwanted touching and other acts, such as staring at her, were likely offensive to Haynes, but not sufficiently severe or pervasive to be actionable under Fifth Circuit standards. That court has affirmed summary judgment in cases where the sexually harassing conduct was much more egregious than is alleged here.

For example, in *Hockman v. Westward Comm.*, LLC, 407 F.3d 317, 326 (5th Cir. 2004), the court affirmed summary judgment as a matter of law in the face of the plaintiff's allegations that:

> Rogers [alleged harasser] commented on the body of a former Westward employee . . .. Specifically, Hockman claims that '[Rogers] would tell her that [the former employee] has a nice behind and body.' Next, Hockman claims that beginning in July of 2001, Rogers would brush up against her breasts and behind. Third, Hockman claims that on one occasion, Rogers 'slapped [her] behind with a newspaper.' Fourth, Rogers once attempted to kiss Hockman. Fifth, on more than one occasion, Rogers asked Hockman to come in early so that they could be alone together. Finally, Rogers once stood in the doorway of the ladies' restroom as Hockman was washing her hands. Rogers stepped aside, however, when Hockman exited the restroom.

6

407 F.3d at 321-22. In *Shepherd v. Comptroller of Public Accounts*, 168 F.3d 871, 872 (5th Cir. 1999), the court found summary judgment for the employer appropriate in a case where the plaintiff testified her harasser told her "your elbows are the same color as your nipples" and "you have big thighs" as he simulated looking under her dress; stood over her desk on several occasions and tried to look down her clothing; touched her arm on several occasions, rubbing his hands from her shoulders to the wrist; and twice, when plaintiff walked into a meeting, patted his lap and said "here's your seat." Talbert's alleged harassment by Talbert was not sufficiently severe or pervasive to withstand summary judgment under this Fifth Circuit precedent.

In addition, Haynes cannot show that defendant failed to take prompt remedial action. Prompt remedial action must be reasonably calculated to end the harassment. *Hockman*, 407 F.3d at 329. Once notified in February of Talbert's conduct, Gaines and/or Melvin Shepherd took the remedial action of ordering Talbert to stay away from Haynes's work area.[7] It is undisputed that Talbert never touched Haynes again. Haynes did not complain to management again until August. At that time, defendant promptly transferred Talbert to a different facility, and the harassment stopped.[8]

---

[7]   Talbert says that Gaines told him to stay away from Haynes. Shepherd says that he also told Talbert not to go near Haynes's unit. Dkt. 33 at 5, 27, 41. Several employees were aware that Talbert was not permitted in Haynes's unit. Dkt. 33 at 29-47 (witness statements).

[8]   The record reflects that Talbert worked at the North Distribution facility until May 21, 2014, when he again reported to the downtown General Post Office. Dkt. 28 at 3 n.1. The record does not reflect why he was reassigned or who made the decision to do so. There is no evidence that he was assigned anywhere near Haynes, or that she even saw him between May

For these reasons, the court concludes that defendant is entitled to summary judgment on Haynes's hostile work environment claim.

***Retaliation***.   The elements of a retaliation claim are (1) protected activity; (2) a materially adverse action; and (3) a causal link between the protected activity and the materially adverse action.  *Fabela v. Socorro Indep. School Dist.*, 329 F.3d 409, 414 (5th Cir. 2003). In the context of retaliation, a materially adverse action is one that "might well have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Railway Co. v. White,* 548 U.S. 53, 68 (2006).

Haynes contends that after she made her sexual harassment complaint, management began treating her badly. Haynes alleges she heard rumors she would be transferred, but she was not transferred. She also alleges that she was once wrongly accused of being AWOL when she left at the end of her shift, but she was not written up or otherwise disciplined for as a result.[9] On another occasion Haynes's check was inaccurate and she complains she was not given adequate help to fix it, but she does not allege the mistake was never corrected, and there is no evidence the mistake was intentional.[10] In her affidavit, Haynes makes the conclusory allegation she was "constantly threatened with unwarranted discipline attempts,"[11]

---

and October when she was terminated.

[9]    Dkt. 33-1 at 3.

[10]   *Id*.

[11]   *Id.*

but there is no evidence that Haynes was written up or disciplined for any infraction she did not commit.[12]

None of the alleged "bad acts" rise to the level of a materially adverse action, even under the retaliation standard set by *Burlington Northern*.[13] Moreover, there is absolutely no evidence that the various people responsible for the alleged adverse actions were motivated by Haynes's complaint against Talbert.[14] Because there is no evidence of any causal nexus between any materially adverse actions cited by Haynes and her complaint of sexual harassment, defendant is entitled to summary judgment.

---

[12]    *See* Dkt. 27-6 at 47-51.

[13]    The Fifth Circuit has not recognized a claim of retaliatory hostile work environment. *Tejada v. Travis Ass'n for the Blind*, 617 Fed. App'x 325, 328 (5th Cir. 2015). In *Tejada*, the Fifth Circuit analyzed such a claim under the traditional retaliation standard. *See also Fallon v. Potter*, 277 Fed. App'x 422, 424 & n.3 (5th Cir. 2008). To the extent such a theory is cognizable in the Fifth Circuit, one district court proposed a hybrid standard that requires severe or pervasive harassment, and also requires proof the plaintiff engaged in protected activity, and proof of a causal connection between the protected activity and the harassment. *Rowe v. Jewell*, 88 F. Supp. 3d 647, 673-74. To the extent Haynes is attempting to allege retaliatory hostile work environment, the incidents she cites are not severe or pervasive, and there is no proof of a causal connection.

[14]    At the hearing, Haynes's counsel represented that there is an audio recording of someone "higher up" than Haynes, whom he could not immediately identify, saying that management had it out for Haynes because she complained about sexual harassment. The court was skeptical about the admissibility of such hearsay evidence, but withheld definitive ruling pending further review of the record. There is no audio recording in the summary judgment record. There is a reference in plaintiff's summary judgment response to an audio recording of Sheila Outley, (Dkt. 32 at 5), but the recording is not an exhibit to the response, and it is cited only for the proposition that Haynes was not told of the 45-day filing deadline in her interviews during the EEO process.

**<u>Conclusion</u>**

For the reasons discussed above, the court denies defendant's motion to dismiss (Dkt. 25), and grants its motion for summary judgment (Dkt. 28). The court will issue a separate take-nothing final judgment in favor of defendant.

Signed at Houston, Texas on May 20, 2016.

Stephen Wm Smith
United States Magistrate Judge